IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TEVON MARLEY,

                                      OPINION AND ORDER

               Plaintiff,

                                         16-cv-609-bbc

      v.

STEVEN WILLETT, PETER KARNA,
ISAAC HART, SANDRA HAUTAMAKI,
WELCOME ROSE and CINDY O'DONNELL,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       Pro se plaintiff and prisoner Tevon Marley is proceeding on claims that several prison officials at the Columbia Correctional Institution acted negligently and violated his Eighth Amendment rights by refusing to allow him to have shoes that he ordered for his foot condition. Now before the court are the parties' cross motions for partial summary judgment. Dkt. ##41 and 51.

       For the reasons set out below, I am granting defendants' motion for summary judgment and denying plaintiff's motion. Plaintiff's Eighth Amendment claim fails on the merits and his state law claims must be dismissed because he failed to comply with the notice of claim requirements of Wis. Stat. § 893.82.

       From the defendants' proposed findings of fact and plaintiff's responses, I find that the following facts are undisputed unless otherwise noted. (Plaintiff did not submit his own proposed findings of fact.)

1

UNDISPUTED FACTS

A. The Parties and Background Information

Plaintiff Tevon Marley is incarcerated at the Columbia Correctional Institution. Defendants Steven Willett, Peter Karna, Isaac Hart and Sandra Hautamaki work at the institution. Defendants Welcome Rose and Cindy O'Donnell work in the Department of Corrections central offices.

On March 3, 2014, a podiatrist not employed by the Department of Corrections gave plaintiff a diagnosis of degenerative joint disease in his right ankle and recommended that plaintiff's prison medical providers send him to Aljan Company, an orthotics company with which the department contracts, so that plaintiff could get an ankle-foot orthosis device for his right ankle. The podiatrist also recommended that plaintiff get a pair of supportive athletic shoes to accommodate the orthotics device. Plaintiff asked the department to pay for the shoes but the Special Needs Committee at the prison denied the request on September 14, 2014, directing plaintiff to order his shoes through the department's approved vendor catalogs at his own expense. None of the defendants served on the prison committee.

The Department of Corrections has established an approved vendor catalog system through which inmates may order personal property items, including athletic footwear, from certain "security-minded" vendors. This system is designed to avoid having prison staff approve each individual purchase by inmates on a case-by-case basis. The department

2

requires that the value of an inmate's personal property (including shoes) not exceed $75, excluding tax and shipping costs. DAI Policy #309.20.03, dkt. #54, exh. #2. The reason for the rule is that owning valuable personal property items increases the risk of theft, fighting and other misconduct among inmates. Neither the approved vendor catalog nor the department rule on personal property prevents an inmate from purchasing an item valued at more than $75 if the item is deemed necessary by medical providers to accommodate an inmate's medical condition.

B. October 2014 Medical Restriction for Orthosis and New Balance Shoes

Plaintiff received his orthotics device on October 13, 2014. The orthotics specialist outside the prison noted that plaintiff would need size 13 New Balance shoes to accommodate the new device and wrote that "any outside vendor OK." Dkt. #45, exh. #1 at 2. On the same day, prison staff made an entry on plaintiff's "Special Handling Summary" in the Wisconsin Integrated Corrections System database showing that he was approved for size 13 extra wide New Balance shoes "to be worn when brace is on" and that may be ordered from the approved vendor catalog or an outside vendor. (Although it is not completely clear, it appears that medical staff enters information into this database from inmates' medical records so that other prison staff have access to it and can learn about any medical restrictions inmates may have.)

Plaintiff ordered the recommended New Balance shoes from Eastbay for $74.99 (not including tax or shipping) and received them on October 30, 2014. Although Eastbay was

not an approved vendor, the orthotics specialist specifically stated that plaintiff could order from "any outside vendor." Plaintiff continues to use these shoes when wearing his orthotics.

C. December 2014 Medical Restriction for Athletic Shoes

On December 17, 2014, plaintiff saw the outside podiatrist, who discussed ankle surgery and gave plaintiff a steroid shot. The podiatrist recommended that plaintiff "continue to wear AFO [ankle-foot orthosis] and athletic shoes at all times" and be allowed to wear and order "high top athletic shoes if not wearing brace" from an "outside vendor or catalog." Dkt. #45, exh. #1 at 6. No shoe size was specified on the form completed by the podiatrist. A Department of Corrections "Medical Restrictions/Special Needs" form dated the same day notes that as of December 17, 2014, plaintiff was approved for "high top athletic shoes from catalog or outside vendor to be worn when brace not on" and he "[m]ay purchase/wear personal high top shoes from outside vendor when not wearing brace for additional support." Dkt. #44, exh. #3 at 15. (It is unclear who completed this form and who had access to it.) As discussed below, this information was not entered into the prison database and did not appear on plaintiff's special handling form until October 2015.

Plaintiff had a follow-up appointment with the podiatrist on March 11, 2015, but his shoe situation was not discussed. Plaintiff later had a magnetic resonance imaging study of his right foot on May 13, 2015, and he elected to undergo surgery on October 26, 2015.

4

D. Air Jordan Shoes

1. Initial pair of Air Jordans

In April 2015, plaintiff's family ordered plaintiff size 12 Air Jordan high top athletic shoes from Eastbay. Although the shoes cost $94.99, they were delivered to plaintiff at the prison. It is not clear who allowed plaintiff to have the shoes, but a "Property Receipt/Disposition" dated April 14, 2015 is signed by a sergeant who is not a defendant in this case. Dkt. #1, exh. #1 at 4. (Plaintiff says that defendant Willet gave him the shoes but defendants deny it, saying that the approval of the shoe delivery was an error.)

2. Defendant Willett denies delivery of second pair of Air Jordans

On September 8, 2015, plaintiff ordered another size 12 pair of Air Jordan high top shoes from Eastbay for $114.99 (not including a $17.25 discount). On September 15, 2015, defendant Willett was working in the prison property and mail room. He denied delivery of plaintiff's shoes on the ground that plaintiff did not have a medical restriction allowing him to have the shoes. At that time, plaintiff's special handling summary did not reflect the podiatrist's December 2014 recommendation regarding the additional pair of high tops to be used without the brace. (Defendants also say that the shoes were partially green in color, in violation of department rules but there is no evidence that this was a reason that the shoes were not approved. The policy relating to shoe colors took effect on March 1, 2016, after this shoe order.) Plaintiff says that Willett told him initially that he was not

delivering the shoes because Willett believed that plaintiff had ordered them for someone else.

3.  Plaintiff files information requests and inmate complaint

On September 22, 2015, plaintiff submitted an information request to defendant Karna, who was Willett's supervisor, explaining that the shoes were for him because he had a medical restriction. Karna responded that "[t]he shoes you ordered are not special need. You already rec'd podiatry shoes in 2014. The shoes you ordered are not the size specified." Dkt. #1, exh. #1 at 18. Karna says that he relied on what he was told by medical staff in the prison's health services unit and the Special Needs Committee about plaintiff's restrictions.

Plaintiff filed an inmate complaint about his shoes on October 7, 2015, stating that he had a medical restriction allowing him to have size 13 shoes to wear with his orthotics device *and* size 12 high top athletic shoes to wear when he was not wearing his orthotics device. The complaint was assigned to defendant Hart, an institution complaint examiner.

Meanwhile, prison medical staff made an entry on October 26, 2015 in plaintiff's special handling summary in the prison database stating that plaintiff was approved for size 12 extra wide New Balance high top athletic shoes *and* size 12 wide high top athletic shoes "to be worn when brace is not on" and that may be ordered from the catalog or an outside vendor. (It is unclear where the size 12 specification came from because the December 2014 podiatrist note did not make any reference to a size 12 shoe.) The health services unit

notified plaintiff in a memorandum dated October 27, 2015, that his "special handling" had been updated to reflect his shoe restriction but that he "must still remain within the parameters of the shoe restriction as outlined in [his] inmate handbook and DAI [§] 309.20.03 [Inmate Personal Property and Clothing]." Dkt. #45, exh. #1 at 12. (As noted above, DAI § 309.20.03 sets a $75 price limit on personal property items.)

On October 28, 2015, plaintiff submitted an information request to defendant Willett, informing Willett that his special handling summary had been updated. Willett responded on October 29, 2015, denying him the shoes because the "new restriction states your shoes must be New Balance size 12 extra wide" and "[t]he shoes you got in are Air Jordan size 12 normal width." Dkt. #1, exh. #1 at 22. That day, plaintiff submitted a request to health services, asking them to inform Willett that the size 12 shoes were part of his medical restriction. On October 29, health services staff responded that the "shoes were received and did not meet policy requirements. . . .You are allowed size 12 shoes but they must meet policy color guidelines." Dkt. #45, exh. #1 at 13. (The color guidelines referred to did not become formal until March 1, 2016.)

4. Denial of inmate complaint

Defendant Hart recommended dismissal of plaintiff's inmate complaint on November 6, 2015, noting that he had reviewed plaintiff's special handling summary stating that plaintiff could order athletic shoes from the approved vendor catalog *or* an outside vendor. Hart explained that the approved vendor catalogs offered high top athletic footwear and that

7

plaintiff had not shown that he had exhausted those options. He also noted that the price limit for personal property applied to the shoes because the special handling summary did not give plaintiff permission to exceed the $75 limit. However, Hart acknowledged that the physician's shoe recommendation was "somewhat vague" and asked the health services unit manager to clarify it.

Defendant Hautamaki, the deputy warden at Columbia Correctional Institution, adopted Hart's recommended decision on November 8, 2015, concluding the institutional level of review. Plaintiff filed an administrative appeal on November 11, 2015, arguing that the vendor catalogs were inadequate and that the $75 limit did not apply to him because he had a medical restriction, but he did not submit any evidence with his appeal to support his claims about the inadequacy of the shoes offered in the catalog.

On December 10, 2015, defendant Rose, a corrections complaint examiner, recommended dismissal of plaintiff's complaint. She noted the following:

> This examiner reviewed the high top athletic shoe offerings in both the Union Supply and the JL Marcus vendor catalogs. Both offer a high top athletic shoe (Nike in Union Supply and Reebok in JL Marcus) in either size of 12 or 13. The inmate is required to purchase the shoe from the approved vendor catalogs, unless the shoe orders have since been updated by the physician to document that no acceptable offering is available for the inmate's needs through the vendor catalogs. Accordingly, it is recommended this appeal be dismissed. It is further recommended HSM Marshak be copied on the appeal decision so that the appropriate information is shared with property staff needing to know whether or not the inmate is able to order a shoe outside of the vendor catalogs.

Dkt. #44, exh. #3 at 9. Defendant O'Donnell adopted Rose's recommendation and issued a final administrative decision on behalf of the secretary of the Department of Corrections

on December 15, 2015. A copy of that decision was sent to medical staff at the institution.

E. November 2015 Medical Appointments and Restriction

While the appeal of plaintiff's inmate complaint was pending, plaintiff saw his podiatrist for a post-surgery follow-up appointment on November 4, 2015. The podiatrist recommended that plaintiff get a new orthotic device. When plaintiff's sutures were removed on November 18, 2015, the podiatrist again recommended that plaintiff get new orthotics as soon as possible and be allowed to wear size 13 shoes with the orthotic device and size 12 regular shoes without it. The podiatrist did not make any recommendation about where the shoes should be purchased or whether plaintiff could exceed the $75 price limit set by the department. A Department of Corrections physician reviewed both recommendations and approved them.

F. Additional Communications About Shoes

Plaintiff wrote to institution complaint examiner staff at Columbia asking about the whereabouts of his shoes on January 9, 2016 and again on February 29, 2016, stating that he refused to send back the Air Jordans and intended to file a lawsuit. On March 1, 2016, staff told plaintiff that even if he ordered shoes from an outside vendor, he would have to follow department policies regarding the $75 price limit and allowable colors.

G. April 2016 Medical Restriction

At an April 6, 2016 appointment, the podiatrist noted that plaintiff had quite a bit of pain and tendinitis from not wearing a shoe with enough support. The podiatrist stated that

> The shoe that he has is okay, but he can do better. He also needs to get a custom orthotic. . . . I also recommended that they allow him to exceed the $75 limit and order from an outside catalog to get shoes to accommodate the orthotics.

Dkt. #45, exh. #1 at 19.


OPINION

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. Foley v. City of Lafayette, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." Siegel v. Shell Co,, 612 F.3d 932, 937 (2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." Id. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

10

Plaintiff contends that defendants violated the Eighth Amendment and state negligence law by refusing to let him have the shoes that his podiatrist recommended for his foot problem, thereby causing him more foot pain.

## A. Eighth Amendment

The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. Id. at 828; Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

At least for purposes of summary judgment, defendants concede that plaintiff had a serious medical need with respect to his feet. Therefore, the question is whether plaintiff has submitted enough evidence from which a reasonable jury could conclude that any of the defendants acted with "deliberate indifference" toward his serious medical need. Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012).

"Where, as here, an inmate sues prison employees who are not part of the medical staff, deliberate indifference can be shown with evidence that those employees ignored or interfered with a course of treatment prescribed by a physician." McDonald v. Hardy, 821 F.3d 882, 888 (7th Cir. 2016) (citing Estelle, 429 U.S. at 104-05). It is not enough to show that prison officials merely failed to act reasonably. Gibbs v. Franklin, 49 F.3d 1206, 1208 (7th Cir. 1995). "A state officer is deliberately indifferent when he does nothing . . . or when

he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." Figgs v. Dawson, 829 F.3d 895, 903 (7th Cir. 2016) (internal citations omitted). "[S]pecifically, he must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." Gevas v. McLaughlin, 798 F.3d 475, 480 (7th Cir. 2015) (internal quotation omitted). See also Norfleet v. Webster, 439 F.3d 392, 397 (7th Cir. 2006) (deliberate indifference is "akin to criminal recklessness, which requires that the defendant be aware of and disregard an excessive risk of serious harm to the inmate"). Further, "if a prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011).

In this instance, each defendant told plaintiff that he or she was denying his size 12 Air Jordan shoes because the shoes came from an outside vendor and not from the approved vendor catalog and their value exceeded the $75 price limit set by the department for personal property items. Plaintiff has not challenged the validity of the policies. Instead, he argues that defendants should not have applied the policies in his case because he qualified for an exception on the ground that his podiatrist determined that the shoes were medically necessary for his foot and ankle problems. However, the undisputed evidence does not show that defendants ignored or acted contrary to any medical restriction of which they had been informed.

Defendant Willett refused to deliver the size 12 normal-width Air Jordan shoes that plaintiff ordered in September 2015 because plaintiff did not have a medical restriction for that shoe. After plaintiff contacted Karna on September 22, 2015, Karna confirmed the lack of a medical restriction with medical staff and upheld Willett's decision, stating that plaintiff had

received special podiatry shoes in 2014 and that the new shoes were not the size specified in the medical restriction.

At the time Willett and Karna made their decisions, the medical staff had not updated plaintiff's special handling summary in the department's database to reflect plaintiff's need for a second pair of shoes to be worn without the brace; the special handling summary included only the earlier October 2014 restriction for size 13 New Balance shoes to accommodate plaintiff's orthotics. (The database was later updated to reflect plaintiff's need for size 12 wide shoes, but that change was not made until October 26, 2015, and there is no evidence that any of the defendants were responsible for the delay or mistake in updating the form.) Although the podiatrist's recommendation and the corresponding Department of Corrections form from December 2014 could be interpreted as authorizing plaintiff to order from an outside vendor, there is no evidence that Willett or Karna saw these documents or that they had access to them. Further, none of the medical restrictions issued by the podiatrist up to that point specified that plaintiff needed a size 12 shoe and none stated that the shoes offered in the approved vendor catalog were inadequate or that plaintiff had to spend more than $75 to obtain the shoes he needed.

Although it seems that mistakes were made in translating the podiatrist's recommendations to the prison database, there is no evidence that Willett or Karna knew about those mistakes or had the authority to correct them. In sum, there is no evidence that either Willett or Karna knew that plaintiff had a medical need for size 12 shoes from an outside vendor when they denied his request for shoes in September 2015. Further, Karna

13

was entitled to rely on the prison medical staff's interpretation of plaintiff's medical restriction. Rice ex rel. Rice v. Correctional Medical Services, 675 F.3d 650, 676 (7th Cir. 2012) (prison officials generally entitled to rely on judgment of medical professionals treating inmate).

Plaintiff submitted an information request to defendant Willett on October 28, 2015, informing Willett that the special handling summary had been updated to approve size 12 extra wide New Balance high top athletic shoes *and* size 12 wide high top athletic shoes. On October 29, 2015, Willett again denied plaintiff the shoes because they were size 12 normal width Air Jordans and the new restriction allowed plaintiff to have only size 12 extra wide New Balance shoes. It appears that Willett ignored or missed the additional approval of size 12 wide high top shoes of an unspecified brand, and it seems a bit unreasonable that he would refuse to deliver the shoes plaintiff ordered only because they were normal width. Non-medical prison officials should not deny personal property needed for a medical condition on the basis of on an overly technical reading of prison policy or their own interpretation of vague medical restrictions. However, in updating his special handling summary, the health services unit made clear to plaintiff in a memorandum dated October 27, 2015 that plaintiff must still follow the rules with respect to inmate personal property, meaning that he could only order shoes under the $75 limit regardless the shoe size that the podiatrist recommended. As discussed above, the memorandum did not contradict any medical restriction issued by the podiatrist. Therefore, even though the medical restrictions from the podiatrist may not have been particularly clear, it was not deliberate indifference

14

for non-medical staff such as Willett to follow them, particularly in this situation in which prison medical staff had informed plaintiff and Willett's supervisor of the meaning of the restrictions.

Because plaintiff has failed to present sufficient evidence that Willett and Karna knew that the size 12 normal width shoes were medically necessary, a reasonable jury could not conclude that either defendant acted with deliberate indifference to plaintiff's serious medical need in refusing to deliver his shoes. The same holds true for defendants Hart, Rose and O'Donnell, who reviewed and affirmed Willett's and Karna's decisions after reviewing plaintiff's medical restrictions.

Hart investigated the inmate complaint that plaintiff filed on October 7, 2015. After reviewing plaintiff's recently-updated medical restrictions, Hart concluded on November 6, 2015 that nothing in plaintiff's special handling summary or the supporting medical restrictions made it necessary for plaintiff to order shoes from an outside vendor that cost more were more than $75. Recognizing that the medical restriction paperwork was "somewhat vague," Hart flagged the issue for medical staff so that the restrictions could be clarified if necessary. Although the podiatrist later clarified plaintiff's medical restriction on November 18, 2015, recommending that plaintiff wear size 13 shoes with the orthotic device and size 12 regular shoes without it, the podiatrist did not make any recommendation about where the shoes should be purchased from or whether plaintiff could exceed the $75 price limit set by the department. Defendants Hautamaki, Rose and O'Donnell agreed with Hart's conclusion based on the information available to them and notified prison medical staff of the final decision, with

specific instructions to resolve any confusion regarding the recommendations of plaintiff's podiatrist.

Plaintiff points out repeatedly in his brief that the podiatrist made clear that the shoes that plaintiff was wearing to his appointment on April 6, 2016 were only "okay" and that he "could do better." As defendants contend, it is unclear whether the podiatrist was referring to plaintiff's athletic shoes or the size 13 shoes that would accommodate the orthotics. In any event, plaintiff has failed to present evidence that any of the defendants were made aware of the April 2016 recommendations of the podiatrist, which came after O'Donnell made the final decision with respect to plaintiff's appeal in December 2015 and after plaintiff wrote the inmate complaint examiner staff about the whereabouts of his shoes in January and February 2016. In fact, plaintiff has not made any allegations with respect to defendants' conduct after the April 2016 appointment. Although defendants admit that the podiatrist's use of the phrase "I recommended" in his April 2016 progress note suggests that he previously intended to recommend that plaintiff be allowed to order from an outside vendor and not subject to the $75 limit, none of the previous recommendations contained this language that would have put defendants on notice that a medical exception to the policy was necessary.

In sum, plaintiff has failed to present evidence from which a reasonable jury could conclude that defendants were deliberately indifferent to his serious medical need in requiring him to follow the Department of Corrections policies requiring inmates to order shoes from approved vendors that do not cost more than $75. Therefore, I find that defendants are entitled to summary judgment as to plaintiff's Eighth Amendment claims against them.

B. State Law Negligence

Plaintiff also brings negligence claims against defendants. Wisconsin's notice of claim statute, Wis. Stat. § 893.92, requires a claimant in a civil action to serve the attorney general written notice of the circumstances of his claim by certified mail within 120 days of the event causing the injury. Strict compliance with the statute is a jurisdictional requirement for a state law claim against a state employee. Sorenson v. Batchelder, 2016 WI 34, ¶ 30, 368 Wis. 2d 140, 154, 885 N.W.2d 362, 368 (citing Wis. Stat. § 893.82(2m)); Ibrahim v. Samore, 118 Wis. 2d 720, 726, 348 N.W.2d 554, 558 (1984). See also Weinberger v. Wisconsin, 105 F.3d 1182, 1188 (7th Cir. 1997) ("Section 893.82 is jurisdictional and strict compliance is required."). Defendants say that plaintiff did not serve the notice of claim within 120 days or by certified mail. Defendants are correct that the notice was untimely.

Although plaintiff submitted a letter to the court on February 17, 2017, dkt. #21, in which he stated that he served a notice of claim on the attorney general by certified mail, he stated that he filed his notice on May 18, 2016, which was 246 days after Willett denied him the shoes on September 15, 2015, and 155 days after defendant O'Donnell affirmed the denial of his shoes on December 15, 2015. Plaintiff contends that his notice of claim was timely because only 107 days passed between the filing of his notice of claim on May 18, 2016 and the filing of his complaint in this lawsuit on September 2, 2016. However, the notice of claim statute requires that the notice be filed 120 days after the event causing injury. The latest date on which this could have occurred was the date on which O'Donnell

17

made the final decision to deny plaintiff's shoes (December 15, 2015). Because plaintiff cannot meet the notice of claim requirement, his negligence claims must be dismissed.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendants, dkt. #41, is GRANTED, and plaintiff Tevon Marley's motion for summary judgment, dkt. #51, is DENIED. The clerk of court is directed to enter judgment for defendants and close this case.

Entered this 6th day of March, 2018.

BY THE COURT:
/s/

_____
BARBARA B. CRABB
District Judge